And we will move on to our final case for this morning, which is Herrera-Ramirez v. Attorney General Sessions. Mr. Ziemer. May it please the Court, my name is David Ziemer and I represent the petitioner Maricela Herrera-Ramirez. When I began researching this case, I expected to find a very great deal of cases involving the relation of party to a crime or aiding and abetting liability to whether a crime is particularly serious. I was rather surprised that, and I was not limited to the Seventh Circuit, I looked throughout the country, and I did not find much. And what I found was the Tunis case. And it states that even though dealing drugs is pretty much per se a particularly serious crime, merely driving someone to a drug deal or engaging in other things, thus aiding and abetting the transaction, might perhaps constitute mere peripheral involvement and thus not make the alien guilty of a particularly serious crime. So let me squarely put the jurisdictional question here. Wisconsin, actually not unlike the U.S. Code, treats people who aid and abet the same way they're all parties to a crime. The person who directly commits, the person who intentionally aids and abets, same thing you find in 18 U.S.C. Section 2. And in some situations, such as the aggravated felonies, the law just establishes the character of the crime for purposes of immigration law. But in others, the board is invited to make its own overall assessment. But that is a discretionary function, and the government has argued, one, that we don't have jurisdiction to overturn. So I'm looking for the legal issue in this case that is something that we can actually speak to. Well, to begin, one of the things that the court is supposed to look at is the sentence. In this case, they didn't do so. The BIA didn't do so. Basically, they said, well, look, there are other guys in the car. They didn't even get charged with a crime. But that's asking us to reevaluate the board's exercise of its own discretion. And the board looks at a lot of different things when it goes about characterizing this as a particularly serious crime. That's the question. Is it a particularly serious crime? But the other thing, you know, another error that the BIA made was, you know, they said, they noted, well, the recklessly endangering does not enumerate multiple modes of committing the offense. And yet, the simple fact that she was charged as a party to a crime, there are multiple modes when a person is charged as a party to a crime. You can directly commit it or you can aid and abet it. And, you know, in this case, I mean, the elements of this crime are, you know, that the person caused great bodily harm. Ms. Herrera didn't do that. That the person had utter disregard for life. Ms. Herrera didn't do that. Well, I, you know, I'm not sure that I'm going to go quite that far. I mean, the board says that they think it's particularly serious. She's driving a motor vehicle through city streets while people in the car are shooting out the window. Even if you take her story, she was, you know, she lets these people get in her car and she thinks she knows the guy has a gun and she thinks he's going to go out and rob someone. I mean, if it's discretionary for the board to say when somebody is a party to this particular crime under Wisconsin law, are we going to treat this as a particularly serious crime? That looks like an all-the-facts kind of determination. If I can distinguish Estrada. When you look at the Estrada opinion, the Seventh Circuit's court said the BIA did consider the sentence. The BIA did consider the fact that the victim was a. . . It's just not persuaded here that the sentence overrides the fact that she's assisting this gang violence. Well, but as I said, though, I mean, they said the BIA considered the victim's age. The BIA considered the mistake of age argument. The BIA considered that, you know, in some states, you know, having sex with a 16-year-old wouldn't even be a crime. Here, the court did not even consider the fact, the sentence she received, and did not even consider. . . And I want to know where is the legal compulsion to do that? I mean, the board can look at a crime, and it's probably going to be influenced by different factors for different crimes, but it's going to. . . So where is the rule of law that says they had to consider, for example, that she got a very light sentence? That's. . . I mean, that's the standard. . . I mean, that's. . . I mean, that's the standard methodology that the courts. . . That if they put forth, the board should consider the. . . You know, sometimes we just look at the elements of the offense, but the more. . . The better way to do it is that you look at the sentence. You look at all the surrounding circumstances. You know, I guess. . . I mean, as far as the basic legal error, I think, is the fact that they said the refusal to recognize the huge difference between directly committing, being guilty of directly committing the action, and being only party to a crime. Well, the shooter was charged as a party to the crime, too. It wasn't a different charge. I understand. And also, if you look at her actual conduct, I don't know what she was supposed to do. I mean, I've never shot out of a moving car, but I'm sure that it's a lot easier to shoot out of a stationary car than one that's moving. If she had stopped the car, what would she have done? She just made it easier for the shooter to kill the people he was shooting at. I don't. . . For the life of me, I don't think. . . In all sense, someone started shooting out. Should you stop? Should you drive away? Which is worse? Which creates a more dangerous situation? I don't know. Her own car? My car? Her own car. Who owned the car? I don't know who owned the car. But it was her car. I mean, she's using it. But doesn't the conviction alone imply at least enough intent and involvement as to reject her version in which she's just astonished that this is happening? No. I don't. . . The immigration judge found her testimony credible, that believed her version of events. That's in the record. The IJ found her credible. The Wisconsin conviction shows that she has the necessary mens rea to be a party to this crime. I understand. Let's . . . I mean, as for how broad party to a crime liability is in Wisconsin, it's . . . Suppose I'm sitting in a tavern. And I don't deal drugs. I don't take drugs. A guy comes in and sits next to me. Hey, do you know where I can score? I'm like, I'm me, man. But, you know, Joe's the . . . You know, Joe over there, he's the tavern drug dealer. And he goes over there. If that's a controlled buy, Wisconsin's going to charge me with the delivery of a controlled substance as part of your crime. I wonder. I mean, you know, we have . . . Again, we have the same thing in 18 U.S.C. Section 2, which is about who is going to be charged as a principal. And it includes aiders and abettors. But in Milwaukee County, I'd be charged. And I would fit in exactly the theoretical person in Tunis, who's merely a peripheral character. Let me ask one more time. What's the legal issue over which we might have jurisdiction now? I believe it's the complete failure to recognize the difference in party requirement . . . the way that the fact that a direct actor and anyone who aids and abets, even though the statute doesn't . . . So you're saying as a matter of law, we at the immigration level have to draw a distinction that Wisconsin law does not? No, what I'm saying is . . . Yes, you are. What I'm saying is that the BIA has to consider it. A distinction that Wisconsin law does not recognize. But this Court does in Tunis. I'm not sure it goes that far. Or at least perhaps does. Yeah. Okay, thank you. All right. I guess I would . . . You want to save a bit for rebuttal? Yes, thank you. You can do so. And Mr. Tennyson again. May it please the Court. Again, Robert Tennyson for the government. Once more, this Court doesn't have jurisdiction over the case. As you've heard the Petitioner's Counsel speak, really what's going on here is he's trying to ladle some kind of legal issue . . . onto what is basically a discretionary determination by the immigration . . . I mean by the Board in this case. That the individuals driving through the . . . continuing to drive through the streets while someone shoots out of the back of the car . . . is a particularly serious crime. Even if this Court were to say, were to accept jurisdiction, the Board didn't abuse its discretion either. The Petitioner here, as the Board found, did drive through the streets, violating, I guess, what? Wisconsin Statute 940.23A1.  Well, she violated the statute and in doing so, she did so by continuing to drive the car while someone shot out of it. The Board was perfectly free to weigh the factors in the case and determine that that was a particularly serious crime. So, the only legal issue . . . I've been trying to figure out what the legal issue would be that would bring us under Capital D. I suppose you could say that it's possible to review the Board's assessment to see if the crime she committed . . . was per se, not a particularly serious crime. You know, she failed to shovel her sidewalk when it snowed or, you know, something like that. Didn't rake the leaves well. And, if the Board thought one of those was a particularly serious crime, you know, we might have a real problem. But, as soon as we get to the point of saying, well, this is somewhere in the zone that the Board might or might not . . . Then, I think having gotten the preliminary legal issue off the table, then it's up to the Board to characterize the particular crime . . . which is where there's . . . there would be no further review. That is correct, Your Honor. So, if the Board had said this was per se, a particularly serious crime, based upon the elements of the offense, we would have a legal issue. But, the Board said, the legal elements bring this within the periphery of a particularly serious crime. Doesn't decide it. Let's go look at the facts and circumstances. They did so. They found a particularly serious crime as a matter of discretion and there is no jurisdiction over the case. The Court has no further questions. The Government rests. What do you recommend? What do you recommend the driver do in such a situation? Slow down. Give him a really good shot at it. I would say don't get into the situation in the first instance. If you find someone . . . Start weaving. Just don't get there in the first place. And two, if you find someone in the back of the car who has a gun who says, I want to rob the people in front of the bar. You don't drive in front of the bar. Don't let them in the car in the first place, I guess, right? Don't let them in the car. Don't put them in your car. Exactly. That's what I mean. I don't want to lose a car at work. Right. All right. Thank you. All right. Thank you very much. Anything further, Mr. Ziemer? Yes. In Estrada, this Court dismissed the argument as saying that Estrada is simply asking . . . All his argument is that the BIA incorrectly weighed the relevant factors. My argument is that they didn't consider the relevant factors at all. And as far as . . . The idea that . . . She had no idea. I mean, she didn't drive in front of this car because they wanted to rob him. There's no evidence whatsoever that she knew that there was a gun in the car. And, in fact, the simple fact that the Wisconsin jury found her not guilty of the wild-armed enhancer . . . indicates that the jury found that she didn't know that she had a gun. Frankly, not knowing that the person had a gun, I'm not exactly sure why they found her guilty of anything. But, that's what the jury found. I'm not going to quibble with them. That's not my job. That's not your job with the BIAs. Under the circumstances that we have in this case, though . . . She didn't injure anyone. She didn't act with utter disregard for human life. She didn't engage in any criminally reckless conduct. She did something that I think any of us in that situation . . . I don't know what we'd do. Whether we'd stop or drive away. That's all I have to say. All right. Well, thank you very much. Thanks to both counsel. We'll take the case under advisement and the court will be in recess.